**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **AMBER J. STRAUTINS,** individually and on behalf of all others similarly situated, | |
| **Plaintiff,** | |
| **v.** | **Case No: 1:12-cv-09115** |
| | **The Honorable John J. Tharp, Jr.** |
| **TRUSTWAVE HOLDINGS, INC., a** Delaware corporation, | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

<u>**AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiff Amber J. Strautins ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, bring this action against Trustwave Holdings, Inc. ("Trustwave" or "Defendant"), and hereby alleges as follows:

<u>**NATURE OF THE CASE**</u>

1.      This is a national class action lawsuit brought by Plaintiff, individually and on behalf of approximately 3.6 million similarly situated individuals and approximately 650,000 similarly situated businesses (*i.e.*, the "Class Members"), seeking relief from the injury caused by Defendant's intentional, willful, reckless and/or negligent violations of their rights.

2.      Plaintiff and the other Class Members are taxpayers who filed tax returns (or had tax returns filed on their behalf) with the South Carolina Department of Revenue ("SCDOR") from 1998 to the present.  By filing tax returns with the SCDOR and paying their taxes, Plaintiff and the other Class Members entrusted Trustwave, a SCDOR cyber-security contractor, with the duty to protect their Social Security numbers, Federal Identification numbers, credit card and/or

1

debit card numbers, tax returns and/or other personally identifiable information (collectively, "Personally Identifiable Information" or "PII") submitted in connection with filing their tax returns. Defendant, however, betrayed Plaintiff's and the other Class Members' trust by failing to properly safeguard and protect their PII from public disclosure without authorization and, in doing so, violated its obligations and numerous laws, including, *inter alia*, the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and various provisions of and duties under common law.

3.     Sometime during August 2012 and September 2012, hackers infiltrated and improperly accessed SCDOR computer systems containing Plaintiff's and the other Class Members' PII through an exposed portal on the SCDOR website and stole and compromised Plaintiff's and the other Class Members' PII (the "Data Breach"). Defendant failed to properly safeguard and protect SCDOR's computer systems and, in the process, failed to safeguard and protect Plaintiff's and the other Class Members' PII. The Data Breach was not discovered until mid-October—even though Trustwave allegedly scanned SCDOR's computer systems on September 14, 2012, and again on October 14, 2012, and found no external vulnerabilities. Plaintiff and the other Class Members, however, were not made aware of the Data Breach until October 26, 2012, at the earliest (more than a month after the Data Breach occurred), or even later.

4.     Defendant flagrantly disregarded Plaintiff's and the other Class Members' privacy rights by intentionally, willfully, recklessly and/or negligently failing to take the necessary precautions required to safeguard and protect their PII from unauthorized disclosure. Plaintiff's and the other Class Members' PII was improperly handled and stored, was unencrypted, and not kept in accordance with applicable and appropriate cyber-security protocols, policies and

procedures. As a result, Plaintiff's and the other Class Members' PII was compromised and stolen by data thieves.

5.     Defendant's intentional, willful, reckless and/or negligent disregard of Plaintiff's and the other Class Members' rights directly and/or proximately caused a substantial unauthorized disclosure of Plaintiff's and the other Class Members' PII.  The improper use of PII by unauthorized third parties can result in an adverse impact on, among other things, a victim's credit rating and finances.  The type of wrongful PII disclosure made by Defendant is the most harmful because it generally takes a significant amount of time for a victim to become aware of its theft and the effects thereof.

6.     On behalf of herself and the other Class Members, Plaintiff has standing to bring this lawsuit because she was damaged as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach.

7.     Defendant's wrongful actions and/or inaction and the resulting Data Breach have placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft and identity fraud.[1] Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, recently released its 2012 Identity Fraud Report (the "Javelin Report"), quantifying the impact of data breaches. According to the Javelin Report, individuals whose PII is subject to a reported data breach— such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity theft and/or identity fraud has not yet been discovered or reported and a high

---

[1] According to the United States Government Accounting Office, the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities, such as when PII is used to commit fraud or other crimes (credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services)).

probability that criminals who may now possess Plaintiff's and the other Class Members' PII have not yet used the information but will do so later, or re-sell it. Even without such loss, Plaintiff and the other Class Members are entitled to relief and recovery, including statutory damages under federal statutory provisions as set forth herein.

8. Accordingly, Plaintiff seeks redress against Defendant for, *inter alia*, violations of FCRA and various common law torts. Plaintiff, therefore, on behalf of herself and the other Class Members, seeks (i) actual and other economic damages, nominal damages, statutory damages, liquidated damages, and/or treble damages; (ii) punitive damages; (iii) injunctive relief; (iv) declaratory relief; and (v) attorneys' fees, litigation expenses, and costs of suit.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 (federal question), and diversity jurisdiction pursuant to 28 U.S.C. § 1332(d), because (i) there are 100 or more Class Members, (ii) at least one Class Member is a citizen of a state that is diverse from the citizenship of Defendant, and (iii) the matter in controversy exceeds $5,000,000 exclusive of interest and costs. The Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. The Court has personal jurisdiction over Defendant because, at all relevant times, it was (and continues to be) headquartered in the State of Illinois and conducts substantial business in the Northern District of Illinois.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, because at all relevant times, Defendant was (and continues to be) subject to personal jurisdiction in the Northern District of Illinois, as Defendant is headquartered in Chicago, Illinois, and conducts substantial business in the Northern District of Illinois.

**PARTIES**

12.     Plaintiff Amber J. Strautins is a resident of Park Ridge, Illinois. Plaintiff Strautins filed tax returns with SCDOR for the calendar years 2007, 2008, 2009, and 2010, that contain her PII. To date, Plaintiff Strautins has not received formal notification from either Trustwave or SCDOR regarding the Data Breach.

13.     Defendant Trustwave Holdings, Inc. ("Trustwave") is a Delaware corporation with its principal place of business at 70 West Madison St., Suite 1050, Chicago, Illinois 60602.

**STATEMENT OF FACTS**

14.     On October 10, 2012, the South Carolina Division of Information Technology ("SCDOIT") informed the SCDOR of a potential cyber-attack involving Plaintiff's and the other Class Members' PII (*i.e.*, the Data Breach).

15.     Upon information and belief, shortly thereafter, SCDOR contracted with Mandiant, an information security company, to investigate the attack on its computer systems.

16.     On October 16, 2012, investigators discovered that there were two attempts to penetrate SCDOR's computer systems in early September 2012. Investigators later discovered that another such attempt was made in late August 2012. Investigators are reported to have concluded that in mid-September 2012, two separate intrusions into SCDOR's computer systems occurred through an exposed portal on the SCDOR website, during which hackers obtained and compromised Plaintiff's and the other Class Members' PII.

17.     The last intrusion is believed to have occurred on September 13, 2012.

18.     On October 26, 2012, SCDOR publicly disclosed for the first time that its computer systems had been hacked into by unknown individuals in September 2012.

19. Upon information and belief, Trustwave was responsible during the relevant period of time for protecting and monitoring SCDOR's computer systems by way of a contract or contracts entered into between Trustwave and SCDOR.

20. On information and belief, SCDOR contracted with Trustwave for the purpose of safeguarding, monitoring, and protecting SCDOR's computer systems and Plaintiff's and the other Class Members' PII.

21. Upon information and belief, and as part of its duties and obligations under its contract(s) with SCDOR, Trustwave scanned SCDOR's computer systems on September 14, 2012, and October 14, 2012, and found no vulnerabilities in SCDOR's computer systems—even though hackers had already penetrated SCDOR's computer systems multiple times and stolen and compromised Plaintiff's and the other Class Members' PII.

22. Trustwave touts itself as "the leading provider of information security and compliance management solutions to government agencies and organizations throughout the world."[2] According to Trustwave, it has "performed more Payment Card Industry Data Security Standard (PCI DSS) Certifications than all other companies combined."[3]

23. According to Trustwave, it also provides encryption services to its customers: "Trustwave's Encryption solutions are used by governmental organizations and agencies to protect sensitive data and solve problems of compliance, breach notification, secure collaboration and protecting intellectual property. Our Encryption solutions are designed to provide the most cost-effective and strongest solution for your data protection needs."[4]

24. Trustwave recognizes the critical importance of protecting data such as Plaintiff's

---

[2]https://www.trustwave.com/government/overview.php (last visited Nov. 11, 2012).
[3]*Id.*
[4]https://www.trustwave.com/government/government-encryption.php (last visited Nov. 11, 2012) (emphasis in original).

and the other Class Members' PII: "Whether it's federal security agencies, emergency services organizations, or mass transit systems, network breaches can result in disastrous situations. Trustwave's government customers are often faced with the most stringent requirements for protecting against data breaches."[5]

25.     Trustwave, however, failed to live up to such standards, including the encryption of Plaintiff's and the other Class Members' PII, which, in turn, allowed the Data Breach to occur and Plaintiff's and the other Class Members' PII to be stolen and compromised. Trustwave failed to discover and timely report the Data Breach even though it allegedly scanned SCDOR's computer systems on September 14, 2012, and on October 14, 2012.

26.     Trustwave's failure to adequately safeguard, protect and monitor SCDOR's computer systems, including encrypting Plaintiff's and the other Class Members' PII, is patently obvious in light of the Data Breach.

27.     SCDOR has reported that approximately 3.6 million Social Security numbers and 387,000 credit and debit card numbers were stolen and compromised by the Data Breach. Approximately 16,000 of the payment cards and their respective information were unencrypted. The Federal Identification numbers of approximately 650,000 businesses were also stolen and compromised.  None of the stolen 3.6 million Social Security numbers and/or 650,000 Federal Identification numbers was encrypted, despite standard industry practices to encrypt such information and Trustwave's capability and obligation to do so.

28.     As a result of Defendant's failure to properly safeguard and protect Plaintiff's and the other Class Members' PII, including, *inter alia*, failing to maintain a proper firewall and computer security system, failing to properly encrypt data—including Plaintiff's and the other Class Members' PII—and violating standard industry practices and protocols for protecting

_____

[5]https://www.trustwave.com/government/government-nac.php (last visited Nov. 11, 2012).

consumer financial data and PII, Plaintiff's and the other Class Members' privacy has been invaded and their rights violated. Their compromised PII was private and sensitive in nature and, on information and belief, was left inadequately protected and unencrypted by Defendant. Defendant's wrongful actions and/or inaction and the resulting Data Breach have placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft and identity fraud.

29.     Identity theft occurs when a person's personally identifying information, such as the person's name, e-mail address, billing and shipping addresses, phone number and credit card information is used without his or her permission to commit fraud or other crimes.[6]

30.     According to the Federal Trade Commission ("FTC"), "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[7] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[8]

31.     The FTC estimates that the identities of as many as 9 million Americans are stolen each year. *Id.*

---

[6] *See* www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html (last visited Oct. 29, 2012).
[7] *Protecting Consumer Privacy in an Era of Rapid Change* FTC Report (March 2012) (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf) (last visited Nov. 13, 2012).

[8] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35–38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf (last visited Nov. 13, 2012); *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11–12.

32.     The severity of identity theft is well-documented. In fact, in an October 29, 2012 press conference addressing the Data Breach, South Carolina Governor Nikki Haley revealed that her identity was stolen and that it had taken 4-5 years to repair the resulting damage, including having to "deal with higher interest rates."[9]

33.     As a direct and/or proximate result of the Data Breach, Plaintiff and the other Class members will now be required to take the time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, changing the PIN numbers on their payment cards, placing "freezes" and "alerts" with the credit reporting agencies, closing or modifying financial accounts, and closely reviewing and monitoring their accounts for unauthorized activity. Because Plaintiff's and the other Class Members' Social Security numbers and Federal Identification numbers were stolen and compromised, they also now face a significantly heightened risk of identity theft.

34.     According to the FTC, "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may miss job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit."[10] Victims and potential victims of identity theft and identity fraud—such as Plaintiff and Class Members—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from data

---

[9] http://www.youtube.com/watch?v=ni9jQS3Nb80&feature=player_embedded (last visited Nov. 11, 2012).
[10] *See* Federal Trade Commission, *Fighting Back against Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/defend.html (last visited Nov. 13, 2012).

breaches.[11] According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for data breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of $1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation. *Id*. at 6.

35. According to the FTC, "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may miss job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit."[12]

36. Identity thieves also use Social Security numbers to commit other types of fraud. Other statistical analyses are in accord. The GAO found that identity thieves use PII to open financial accounts and payment card accounts and incur charges in a victim's name. This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, while in the meantime causing significant harm to the victim's credit rating and finances. Moreover, unlike other PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future.

37. Identity thieves also use Social Security numbers to commit other types of fraud, such as obtaining false identification cards, obtaining government benefits in the victim's name, committing crimes and/or filing fraudulent tax returns on the victim's behalf to obtain fraudulent tax refunds. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in the victim's name. Identity thieves also have

---

[11]*Id.*; *see also Fight Identity Theft*, www.fightidentitytheft.com (last visited Nov. 13, 2012).
[12] *See* Federal Trade Commission, *Fighting Back against Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/defend.html.

been known to give a victim's personal information to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record. The GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

38.     The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card. In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently, as well as show that he has done all he can to fix the problems resulting from the misuse.[13] Thus, a person whose PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

39.     Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start. For some victims of identity theft, a new number may actually create new problems. Because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

40.     As a direct and/or proximate result of Trustwave's wrongful actions and/or inaction and the Data Breach, the hackers and/or their customers now have Plaintiff's and the other Class Members' PII. As such, Plaintiff and the other Class Members have been deprived of the value of their PII.[14]

---

[13]*See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327 (http://www.ssa.gov/pubs/10064.html).

[14]*See, e.g.,* John T. Soma, J. Zachary Courson, John Cadkin, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations

41.     Plaintiff's and the other Class Members' PII is such a valuable commodity to identity thieves that once the information has been compromised criminals often trade the information on the "cyber black market" for a number of years.[15] Identity thieves and other cyber criminals openly post stolen credit card numbers, Social Security numbers and other personal financial information on various Internet websites, thereby making the information publicly available. In one study, researchers found hundreds of websites displaying stolen personal financial information. Strikingly, none of these websites were blocked by Google's safeguard filtering mechanism—the "Safe Browsing list." The study concluded:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."[16]

42.     Trustwave's wrongful actions and/or inaction directly and proximately caused the "Holy Grail of data breaches"—the theft and dissemination into the public domain of Plaintiff's and the other Class Members' PII without their knowledge, authorization, and consent. As a direct and proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have incurred damages in the form of, *inter alia*: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased

---

omitted); ABC News Report, http://abcnews.go.com/Health/medical-records-private-abc-news-investigation/story?id=17228986&page=2#.UGRgtq7yBR4 (last accessed Nov. 13, 2012).

[15] Companies, in fact, also recognize PII as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market. Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html; *see also* T. Soma, *et al*, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009).

[16]     http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/ (last visited Nov. 11, 2012).

risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; and (vii) rights they possess under FCRA—for which they are entitled to compensation.

43.     Tellingly, SCDOR is now in the process of encrypting Plaintiff's and the other Class Members' PII, which underscores the availability of such measures that could have provided a measure of protection that Trustwave failed to implement prior to the Data Breach, all the while touting its expertise and ability to do so.

## CLASS ACTION ALLEGATIONS

44.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action as a national class action, individually and on behalf of the following Class of similarly situated individuals and businesses (the "Class"):

> All individuals and businesses who filed, or on whose behalf was filed, a South Carolina tax return for any year from 1998 through and including 2011.

45.     The Class specifically excludes the Court and Trustwave and its officers, directors, agents and employees.

46.     The Class is comprised of approximately 3.6 million individuals and 650,000 businesses, making joinder impracticable. Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

47.     The rights of each Class Member were violated in a virtually identical manner because of Defendant's intentional, willful, reckless and/or negligent actions and/or inaction.

48.     Questions of law and fact common to all Class Members exist and predominate

over any questions affecting only individual Class Members including, *inter alia*:

a. Whether Defendant violated FCRA by failing to properly secure and protect Plaintiff's and the other Class Members' PII;

b. Whether Defendant violated FCRA by failing to encrypt Plaintiff's and the other Class Members' PII in accordance with federal standards;

c. Whether Defendant willfully, recklessly and/or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the other Class Members' PII;

d. Whether Defendant was negligent in storing Plaintiff's and the other Class Members' PII;

e. Whether Defendant owed a duty to Plaintiff and the other Class Members to exercise reasonable care in protecting and securing their PII;

f. Whether Defendant breached its duty to exercise reasonable care by failing to protect and secure Plaintiff's and the other Class Members' PII;

g. Whether Defendant was negligent in failing to secure Plaintiff's and the other Class Members' PII;

h. Whether by publicly disclosing Plaintiff's and Class Members' PII without authorization, Defendant invaded Plaintiff's and the other Class Members' privacy;

i. Whether Defendant breached its contract(s) with SCDOR and/or other South Carolina government agencies, pursuant to which Plaintiff and the other Class Members were the intended third party beneficiaries; and

j. Whether Plaintiff and the other Class Members sustained damages as a result of Defendant's failure to secure and protect their PII.

49. Plaintiff and her counsel will fairly and adequately represent the interests of the other Class Members. Plaintiff has no interests antagonistic to, or in conflict with, the other Class Members' interests. Plaintiff's lawyers are highly experienced in the prosecution of

consumer class actions and data breach cases.

50.     Plaintiff's claims are typical of the other Class Members' claims in that Plaintiff's claims and the other Class Members' claims all arise from Defendant's failure to properly secure and protect their PII.

51.     A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other Class Members' claims. Plaintiff and the other Class Members have been irreparably harmed because of Defendant's wrongful actions and/or inaction. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's failure to secure and protect Plaintiff's and the other Class Members' PII.

52.     Class certification, therefore, is appropriate pursuant to FED. R. CIV. P. 23(b)(3), because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

53.     Class certification also is appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

54.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.  Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I

### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

55.     The preceding factual statements and allegations are incorporated herein by

reference.

56.     FCRA requires consumer reporting agencies to adopt and maintain procedures for

meeting the needs of commerce for consumer credit, personnel, insurance and other information

in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy,

relevancy and proper utilization of such information.  15 U.S.C. § 1681(b).

57.     FCRA defines a "consumer reporting agency" as:

> Any person which, for monetary fees, dues, or on a cooperative nonprofit
> basis, regularly engages in whole or in part in the practice of assembling
> or evaluating consumer credit information or other information on
> consumers for the purpose of furnishing consumer reports to third parties,
> and which uses any means or facility of interstate commerce for the
> purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

58.     FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a
> consumer reporting agency bearing on a consumer's credit worthiness,
> credit standing, credit capacity, character, general reputation, personal
> characteristics, or mode of living which is used or expected to be used or
> collected in whole or in part for the purpose of establishing the consumer's
> eligibility for credit or insurance to be used primarily for personal, family,
> or household purposes; employment purposes, or any other purpose
> authorized under [15 U.S.C. §] 1681(b).

15 U.S.C. § 1681a(d)(1).

59.     Defendant is a Consumer Reporting Agency, as defined under FCRA, because on

a cooperative nonprofit basis and/or for monetary fees, Defendant regularly engages, in whole or

in part, in the practice of assembling information on consumers for the purpose of furnishing

Consumer Reports to third parties and/or uses interstate commerce for the purpose of preparing

and/or furnishing Consumer Reports.

60.     As Consumer Reporting Agency, Defendant was (and continue to be) required to

adopt and maintain procedures designed to protect and limit the dissemination of consumer credit, personnel, insurance and other information in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information. Defendant, however, violated FCRA by failing to adopt and maintain such protective procedures, which directly and/or proximately resulted in the theft and wrongful dissemination of Plaintiff's and the other Class Members' PII into the public domain.

61.     Defendant's violation of FCRA, as set forth above, was willful or, at the very least, reckless.

62.     As a direct and/or proximate result of Defendant's willful and/or reckless violations of FCRA, as described above, Plaintiff's and the other Class Members' PII was stolen, compromised and made accessible to unauthorized third parties in the public domain.

63.     As a further direct and/or proximate result of Defendant's willful and/or reckless violations of FCRA, as described above, Plaintiff and the other Class Members suffered (and continue to suffer) damages in the form of, *inter alia*, (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; and (vii) rights they possess under FCRA—for which they are entitled to compensation.

64.     Plaintiff and the other Class Members, therefore, are entitled to compensation for their actual damages or statutory damages of not less than $100, and not more than $1000, per

Class Member, as well as their attorneys' fees, litigation expenses, and costs, pursuant to 15 U.S.C §1681n(a).

## COUNT II

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

65.     The preceding factual statements and allegations are incorporated herein by reference.

66.     Defendant owed a duty to Plaintiff and the other Class Members to safeguard and protect their PII.  In the alternative, and as described above, Defendant negligently violated FCRA by failing to adopt and maintain procedures designed to protect and limit the dissemination of Plaintiff's and the other Class Members' PII for the permissible purposes outlined by FCRA, which directly and/or proximately resulted in the theft and wrongful dissemination of Plaintiff's and the other Class Members' PII into the public domain.

67.     It was reasonably foreseeable that Defendant's failure to maintain procedures to protect and secure Plaintiff's and the other Class Members' PII would result in an unauthorized third party gaining access to their PII for no permissible purpose under FCRA. Defendant's wrongful actions and/or inaction violated FCRA.

68.     As a direct and/or proximate result of Defendant's negligent violations of FCRA, as described above, Plaintiff's and the other Class Members' PII was stolen and made accessible to unauthorized third parties in the public domain.

69.     As a further direct and/or proximate result of Defendant's negligent violations of FCRA, as described above, Plaintiff and the other Class Members were (and continue to be) damaged in the form of, *inter alia*: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses

incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; and (vii) rights they possess under FCRA—for which they are entitled to compensation. Defendant's wrongful actions and/or inaction violated FCRA.

70. Plaintiff and the other Class Members, therefore, are entitled to compensation for their above-identified actual damages, as well as their attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681o(a).

## COUNT III

## <u>NEGLIGENCE</u>

71. The preceding factual statements and allegations are incorporated herein by reference.

72. Defendant owed a duty to Plaintiff and the other Class Members to safeguard and protect their PII.

73. Defendant breached its duty by failing to exercise reasonable care and safeguarding and protecting Plaintiff's and the other Class Members' PII.

74. It was reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PII would result in an unauthorized third party gaining access to such information for no lawful purpose.

75. Plaintiff and the other Class Members were (and continue to be) damaged as a direct and/or proximate result of Defendant's failure to secure and protect their PII in the form of, *inter alia*: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper

disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; and (vii) rights they possess under FCRA—for which they are entitled to compensation.

76.     Defendant's wrongful actions and/or inaction (as described above) constituted (and continue to constitute) negligence at common law.

## COUNT IV

## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

77.     The preceding factual statements and allegations are incorporated herein by reference.

78.     Plaintiff's and the other Class Members' PII was (and continues to be) private information.

79.     Defendant's failure to secure and protect Plaintiff's and the other Class Members' PII directly resulted in the public disclosure of such private information.

80.     Dissemination of Plaintiff's and the other Class Members' PII is not of a legitimate public concern; publicity of their PII would be, is, and will continue to be offensive to Plaintiff, Class Members, and other reasonable people.

81.     Plaintiff and the other Class Members were (and continue to be) damaged as a direct and/or proximate result of Defendant's invasion of their privacy by publicly disclosing their private facts (*i.e.*, their PII) in the form of, *inter alia*: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-

of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; and (vii) rights they possess under FCRA—for which they are entitled to compensation.

82.     Defendant's wrongful actions and/or inaction (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other Class Members' privacy by publicly disclosing their private facts (*i.e*., their PII).

## COUNT V

## BREACH OF CONTRACT—THIRD PARTY BENEFICIARY

83.     The preceding factual statements and allegations are incorporated herein by reference.

84.     Defendant entered into contract(s) with SCDOR and/or other South Carolina government agencies for the purpose of, *inter alia*, safeguarding and protecting SCDOR computer systems and Plaintiff's and the other Class Members' PII.

85.     Plaintiff and the other Class Members were direct and intended beneficiaries of Defendant's contract(s) with SCDOR and/or other South Carolina government agencies to safeguard and protect Plaintiff's and the other Class Members' PII.

86.     Defendant breached its contract(s) with SCDOR and/or other South Carolina government agencies by failing to safeguard and protect SCDOR computer systems and Plaintiff's and the other Class Members' PII, including failing to encrypt Plaintiff's and the other Class Members' PII, which was stolen, compromised and publicly disseminated by the Data Breach.

87.     Plaintiff and Class Members were (and continue to be) damaged as a direct and/or proximate result of Defendant's breach of its contract with SCDOR—by way of its failure to secure and protect their PII—in the form of, *inter alia*: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of the value of their PII, for which there is a well-established national and international market; and (vii) rights they possess under FCRA—for which they are entitled to compensation.

88.     Defendant's wrongful actions and/or inaction (as described above) constituted (and continue to constitute) a breach of contract as to Plaintiff and the other Class Members as third party beneficiaries.

## **RELIEF REQUESTED**

89.     The preceding factual statements and allegations are incorporated herein by reference.

90.     **DAMAGES.** As a direct and/or proximate result of Defendant's wrongful actions and/or inaction (as described above), Plaintiff and Class Members suffered (and continue to suffer) damages in the form of, *inter alia*: (i) the untimely and/or inadequate notification of the Data Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) deprivation of

22

the value of their PII, for which there is a well-established national and international market; and (vii) rights they possess under FCRA—for which they are entitled to compensation. Plaintiff and the other Class Members also are entitled to recover statutory damages under FCRA and/or nominal damages. Plaintiff's and the other Class Members' damages were foreseeable by Defendant and exceed the minimum jurisdictional limits of this Court.

91. **EXEMPLARY DAMAGES**. Plaintiff and the other Class Members also are entitled to exemplary damages as punishment and to deter such wrongful conduct in the future.

92. **INJUNCTIVE RELIEF**. Plaintiff and the other Class Members also are entitled to injunctive relief in the form of, without limitation, (i) expanded credit monitoring, (ii) identity theft insurance, and (iii) requiring Defendant to submit to periodic compliance audits by a third party regarding the security of consumers' PII in its possession, custody and control.

93. **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**. Plaintiff and Class Members also are entitled to recover their attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to, *inter alia*, 15 U.S.C. § 1681n(a), o(a).

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, respectfully request that: (i) Defendant be cited to appear and answer this lawsuit; (ii) this action be certified as a class action; (iii) Plaintiff be designated as the Class Representative; and (iv) Plaintiff's counsel be appointed as Class Counsel. Plaintiff, on behalf of herself and the other Class Members, further requests that upon final trial or hearing, judgment be awarded against Defendant and in favor of Plaintiff and the other Class Members for:

    (i)      actual damages, consequential damages, FCRA statutory damages and/or nominal damages (as described above) in an amount to be determined by the trier of fact;

    (ii)     exemplary damages:

(iii)    injunctive relief as set forth above;

(iv)    pre- and post-judgment interest at the highest applicable legal rates;

(v)    attorneys' fees and litigation expenses incurred through trial and any appeals;

(vi)    costs of suit; and

(vii)    such other and further relief, at law or at equity, that the Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and the other Class Members, respectfully demands a trial by jury on all of the claims and causes of action so triable.

Respectfully submitted,

/s/  Ben Barnow
Ben Barnow
Sharon Harris
Erich P. Schork
Blake A. Strautins
**BARNOW AND ASSOCIATES, P.C.**
One N. LaSalle Street, Ste. 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
Email: b.barnow@barnowlaw.com
Email: s.harris@barnowlaw.com
Email: e.schork@barnowlaw.com
Email: b.strautins@barnowlaw.com

Richard L. Coffman (admitted *pro hac vice*)
**THE COFFMAN LAW FIRM**
First City Building
505 Orleans St., Ste. 505
Beaumont, TX 77701
Telephone: (409) 833-7700
Facsimile: (866) 835-8250
Email: rcoffman@coffmanlawfirm.com

**<u>Certificate of Service by Electronic Means</u>**

The undersigned, one of the attorneys for Plaintiff, hereby certifies that the proceeding document was caused to be served electronically this 2nd day of January 2013, pursuant to ECF as to Filing users and I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.

/s/ Ben Barnow__